UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - -X

DISABILITY ADVOCATES, INC.,

                  Plaintiff,

      - against -

GEORGE PATAKI, et al.,

                  Defendants.

- - - - - - - - - - - - - - - - - - - -X

<u>ORDER</u>

CV 2003-3209 (NGG)(MDG)

GO, United States Magistrate Judge:

    Defendants move to compel non-party New York City Human Resources Administration ("HRA") to produce all HRA 2000 applications submitted for adult home residents for the period from January 1, 2000 to the present, including all applications containing information relating to substance abuse.

<u>BACKGROUND</u>

    By order dated January 9, 2006, I directed the HRA to comply with two subpoenas served by plaintiff requiring production of certain records concerning two named residents of adult homes, as well as records pertaining to other residents for the period from January 1, 2000 to the present. <u>See</u> ct. docs. 92, 93. I noted that the ruling was without prejudice to the right of HRA to object to disclosure of specific records based on federal law protecting the confidentiality of substance abuse treatment records. <u>See</u> <u>id.</u>

    In a letter to defendants dated February 2, 2006, the HRA renewed its objections to producing "any applications containing

information relating the individual's substance abuse history."
See ct. doc. 97, Exh. B.  The HRA argues that records disclosing
an individual's substance abuse history are protected by 42
U.S.C. § 290dd-2 and its implementing regulations.  According to
the HRA, even a court order authorizing disclosure of such
records must be made subject to certain procedures, including
notice to the patient.

At a conference held on February 10, 2006, I ordered that
the requested information be produced subject to the
confidentiality order stipulated to by the parties.  See minute
entry for conference held on February 10, 2006.

## DISCUSSION

The Public Health Service Act (the "Act"), 42 U.S.C. §
290dd-2, provides for the confidentiality of patient records
"maintained in connection with the performance of any program or
activity relating to substance abuse education, prevention,
training, treatment, rehabilitation, or research, which is
conducted, regulated, or directly or indirectly assisted by any
department or agency of the United States . . ."  The statute is
designed not only to protect the privacy rights of patients but
also to ensure "the continued effectiveness and viability of
important substance abuse treatment programs," since "[p]atients
will be less willing to seek treatment if patient confidentiality
is not strictly protected."  United States ex rel. Chandler v.
Cook Co., Ill., 277 F.3d 969, 981 (7th Cir. 2002).

Notwithstanding the broad language of the Act, the regulations promulgated thereunder clearly are directed at restricting disclosure only of "patient records which are maintained in connection with the performance of <u>any federally assisted</u> alcohol and drug abuse program." 42 C.F.R. § 2.3(a) (emphasis added). The regulations further define a "patient" as "any individual who has applied for or been given diagnosis or treatment for alcohol or drug abuse at a federally assisted program." 42 C.F.R. § 2.11. "Program" is defined as, <u>inter alia</u>, an "entity . . . who holds itself out as providing, and provides, alcohol or drug abuse diagnosis, treatment or referral for treatment." <u>Id.</u> The term "records" is defined as "any information, whether recorded or not, relating to a patient <u>received or acquired by a federally assisted alcohol or drug program</u>." <u>Id.</u> (emphasis added).

The party claiming protection under this confidentiality statute bears the burden of establishing all of its elements. <u>See</u> <u>Beard v. City of Chicago</u>, No. 03 C 3527, 2005 WL 66074, at *4 (N.D. Ill. Jan. 10, 2005); <u>see also</u> <u>von Bulow v. von Bulow</u>, 811 F.2d 136, 144 (2d Cir. 1987) (burden on party asserting privilege). The Court finds that the HRA has failed to establish that the housing applications at issue qualify for protection under the statute.

First, there has been no showing that the HRA housing assistance program is a program which "holds itself out as providing, and provides, alcohol or drug abuse diagnosis, treatment or referral for treatment," as specified by the

regulations. The HRA is a city agency which, inter alia, reviews and approves applications for supportive housing for the mentally ill in New York City. See ct. doc. 84 at 1. The housing applications at issue are for a program to assist individuals in finding appropriate housing given their individual needs. Although the applications require applicants to disclose personal information, including any history of substance abuse, the information sought appears to be in connection with determinations regarding eligibility and type of housing. See ct. doc. 97, Exh. E. For example, some housing providers require a certain period of sobriety prior to admission. Id. Although the housing programs these individuals are eventually placed in may offer "treatment or referral for treatment," the documents at issue are "maintained" by the HRA housing assistance program, not the housing provider. In short, the primary function of the housing assistance program is to provide referrals for housing, not referrals for substance abuse treatment.

Similarly, even if the housing assistance program were a "program" within the meaning of the Act, the HRA has not established that the applicants are "patients." The applicants, in the first instance, are seeking HRA housing assistance rather than admission to any program that "hold[s] itself out as providing substance abuse "diagnosis, treatment or referral for treatment."

Moreover, the HRA has not established that any programs related to substance abuse are "conducted, regulated, or directly or indirectly assisted by any department or agency of the United

States." Although some components of the HRA housing assistance program may receive federal funding, there is simply no evidence that the HRA itself is providing any substance abuse treatment through a program that is conducted, regulated or financed by a federal government agency.

Thus, I conclude that 42 U.S.C. § 290dd-2 is not applicable to the discovery sought by defendants.

Disclosure in this context is consistent with the purpose underlying the statute. The statute and its regulatory scheme protect the confidentiality of substance abuse records in order to encourage substance abuse treatment. Here, since the housing applicants are not disclosing their substance abuse history in order to obtain substance abuse treatment from the HRA, there is no reason that disclosure should inhibit any individuals from obtaining such treatment.

The HRA also objects to producing any information contained in the HRA 2000 applications that would disclose an applicant's HIV status under N.Y. Pub. Health Law § 2785. Although the defendants have not directly responded on that issue, I will briefly discuss it in light of the burden imposed on the entity resisting discovery. Since the claims in this case are brought under the Americans with Disabilities Act and the Rehabilitation Act, federal law, rather than New York law, governs the determination whether the information should be disclosed. See King v. Conde, 121 F.R.D. 180, 187 (E.D.N.Y. 1988); see also Kaufman v. Edelstein, 539 F.2d 811 (2d Cir. 1976) (federal privilege law generally applies in federal question cases). A

court must balance the public need for confidentiality against a party's need for the information.  King, 121 F.R.D. at 187, 190-97.  Although federal courts should "afford deference to state-created privileges, such privileges are construed narrowly and must yield when outweighed by a federal interest in presenting relevant information to a trier of fact."  United States v. One Parcel of Property, 930 F.2d 139, 151 (2d Cir. 1991) (per curiam).

Here, given the protective order in place, the interest in confidentiality is outweighed by the need for the prompt disclosure of the information contained in the applications.  It is undisputed that the HRA is the only source of information as to whether applicants were deemed eligible for supported housing and whether they actually moved to supported housing.

Moreover, if HRA 2000 applications are subsequently used in this litigation, redacting any information disclosing the applicant's HIV status or substance abuse history suffices to protect the interests of the applicants.

## CONCLUSION

For the foregoing reasons, defendants' motion to compel is granted.  The HRA must promptly produce the HRA 2000 applications.

**SO ORDERED.**

Dated:    Brooklyn, New York
          February 28, 2006

/s/_____
MARILYN DOLAN GO
UNITED STATES MAGISTRATE JUDGE