UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

DISABILITY ADVOCATES, INC.,

**MEMORANDUM & ORDER**

03-CV-3209 (NGG) (MDG)

Plaintiff,

-against-

DAVID A. PATERSON, in his official
capacity as Governor of the State of New
York, RICHARD F. DAINES, in his official
capacity as Commissioner of the New York
State Department of Health, MICHAEL F.
HOGAN, in his official capacity as
Commissioner of the New York State Office
of Mental Health, THE NEW YORK STATE
DEPARTMENT OF HEALTH, and THE
NEW YORK STATE OFFICE OF MENTAL
HEALTH,

Defendants.
-------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

 Currently before the court are three motions in limine in the above-captioned action. Defendants David A. Paterson, Richard F. Daines, Michael F. Hogan, the New York State Department of Health, and the New York State Office of Mental Health (collectively, "Defendants") seek to exclude certain exhibits and expert testimony and to limit the scope of fact witness testimony. (Def. Mot. in Limine (Docket Entry #256).) Plaintiff Disability Rights Advocates, Inc. ("DAI") brings two motions: one seeking to exclude a proposed witness, the other seeking to exclude issues raised in Defendants' statement of claims and defenses to be tried. (Pl. Mot. to Preclude Trial Testimony of Previously Undisclosed Witnesses ("Pl. Witness

1

Mot.") (Docket Entry #252); Pl. Mot. to Exclude from Trial Certain Issues Raised in Defs.' Summ. of Claims & Defenses to be Tried ("Pl. Issues Mot.") (Docket Entry #258).) The court first addresses Plaintiff's Motion to exclude issues at trial before turning to the parties' motions regarding exhibits and witnesses. As set forth below, Plaintiff's Motion to exclude issues at trial is GRANTED in part and DENIED in part, Defendants' Motion is GRANTED in part and DENIED in part, and Plaintiff's Motion to exclude Defendants' proposed witness is DENIED.

## I. PLAINTIFF'S MOTION TO EXCLUDE ISSUES FOR TRIAL

Plaintiff's Motion seeks to exclude from trial certain issues in Defendants' summary of claims and defenses to be tried. (Pl. Mem. Supp. Issues Mot. (Docket Entry #259).) Plaintiff seeks to prevent Defendants from re-litigating at trial the threshold issues of standing and the applicability of Title II of the Americans with Disabilities Act ("ADA"), contending that this court conclusively ruled on those issues in resolving the parties' motions for summary judgment. (Id. at 4-7.) Plaintiff contends that other issues presented in Defendants' summary of claims and defenses to be tried are purely legal issues that need not be addressed at trial. (See id. at 7-9.) At the pre-trial conference on May 1, 2009, and in the court's May 1 Order, the court directed Defendants to indicate which issues could be addressed solely by post-trial briefing, and Defendants responded in their opposition to Plaintiff's Motions. (Def. Opp. 5-8 (Docket Entry #263).) As set forth below, the court determines that some of the issues for trial and post-trial briefing are barred and/or limited in scope by the "law of the case" doctrine.

### A. Law of the Case

The law of the case doctrine "commands that 'when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case' unless 'cogent and compelling reasons militate otherwise.'" Johnson v. Holder, --- F.3d ---,

2

2009 WL 997001, at *3 (2d Cir. 2009) (quoting United States v. Quintieri, 306 F.3d 1217, 1225 (2d Cir. 2002) (internal quotation marks omitted)). Such "cogent" or "compelling" reasons include "an intervening change in law, availability of new evidence, or 'the need to correct a clear error or prevent manifest injustice.'" Id. at *4 (quoting Quintieri, 306 F.3d at 1230). The law of the case doctrine is discretionary; the Second Circuit has noted that "the law of the case doctrine 'does not rigidly bind a court to its former decisions, but is only addressed to its good sense.'" Id. at *4 (citation omitted). Moreover, "the decision whether or not to apply law-of-the-case is, in turn, informed principally by the concern that disregard of an earlier ruling not be allowed to prejudice the party seeking the benefit of the doctrine." United States v. Uccio, 940 F.2d 753, 758 (2d Cir. 1991). The Second Circuit has explained that "in this context, prejudice does not mean harm resulting from the failure to adhere to the prior decision; rather, it refers to a lack of sufficiency of notice or a lack of sufficient opportunity to prepare armed with the knowledge that [the prior ruling is not deemed controlling]." Id. (internal quotation marks omitted). Courts have applied the law of the case doctrine to determinations made on summary judgment. See, e.g., Cary Oil Co., Inc. v. MG Refining & Mktg, Inc., 257 F. Supp. 2d 751, 764 (S.D.N.Y. 2003) (granting motion to exclude from trial evidence and argument regarding defenses that were rejected in a previous ruling on summary judgment.)

### B. Issues Barred and/or Limited in Scope by the Law of the Case

The court's previous decisions resolved: (1) the admissibility of Plaintiff's experts and certain exhibits, DAI v. Paterson ("DAI I"), No. 03-CV-3209 (NGG), 2008 WL 5378365, at *21 (E.D.N.Y. Dec. 22, 2008); and (2) the parties' motions for summary judgment, DAI v. Paterson ("DAI II"), 598 F. Supp. 2d (E.D.N.Y. 2009). The court will not revisit issues that it resolved in DAI I and DAI II, because those decisions are the law of the case. This trial, occurring nearly

six years after DAI filed this action, will resolve disputed issues of fact; it will not be an opportunity for Defendants to present "additional or different evidence than was before the Court on the motion for summary judgment" ( Def. Opp. 6) on issues this court already decided.

In its Order dated May 1, 2009, the court stated that it would not "revisit prior to trial its Memorandum & Order resolving Defendants' Daubert motion to exclude Plaintiff's experts, or issues resolved in the Memorandum & Order on the motions for summary judgment. The parties may, however, submit post-trial briefing on these issues." (Order dated May 1, 2009, docketed between Docket Entries #261 and #262.) On further consideration of the parties' submissions and further review of DAI I and DAI II, the court now vacates the portion of its May 1 Order stating that "[t]he parties may . . . submit post-trial briefing on these issues."

Pursuant to the law of the case, the parties may not submit evidence at trial or post-trial briefing on any of the issues resolved in DAI I and DAI II. In particular, the court will not revisit: (1) Plaintiff's standing, see DAI II, 598 F. Supp. 2d at 307-311 (concluding that DAI has statutory and Article III standing and rejecting Defendants' argument that Plaintiff lacked standing to seek system-wide relief); (2) the applicability of Title II, id. at 317 ("[t]he court concludes that Title II of the ADA applies to the claims in this case"), id. at 319 (holding that DAI's "claim falls squarely under Title II of the ADA"); and (3) whether Plaintiff's claims under the Rehabilitation Act should be treated "as identical to the ADA claims," id. at 311 n.25.[1] In addition, this court has already determined the scope of the relevant legal inquiry as to what Plaintiff must show to establish discrimination "by reason of disability." See id. at 311-312.[2]

---

[1] The court will thus consider the ADA and Rehabilitation Act claims under the same standard, and will not entertain post-trial briefing on whether the Rehabilitation Act mandates integration or the validity of the Rehabilitation Act's implementing regulations.

[2] Defendants assert that trial is necessary on "[w]hether plaintiff's constituents have been subject to discrimination 'by reason of their disability.'" (Joint Proposed Pretrial Order 9.) Defendants seek to argue that "the alleged violations experienced by the plaintiff's constituents, such as lack of access to mental health housing or a lack of

4

Plaintiff's motion to exclude issues for trial is thus granted to the extent that the court will not revisit at trial and/or in post-trial briefing issues resolved in DAI I and DAI II; Defendants' proposed issues are barred and/or limited in accordance with those decisions.

The court is aware that, in the event that DAI ultimately prevails at trial, Defendants intend to preserve certain issues for appeal, and the record reflects that Defendants continue to dispute certain determinations this court made in DAI I and DAI II. Nonetheless, the court considers DAI I and DAI II the law of the case, and determines the scope of the trial and post-trial briefing accordingly.

### C. Evidence and Argument Regarding the Statute of Limitations is Not Precluded by the Law of the Case

Defendants assert that the issue of whether relief is barred by the statute of limitations and/or laches, which Defendants raised as a defense in their Answer, is an issue for trial and/or post-trial briefing. In its Motion, Plaintiff contends that there are no disputed issues of fact regarding the statute of limitations, which it contends is a purely legal issue and should be excluded from trial. (Pl. Mem. Supp. Issues Mot. 8-9.)

The parties have not yet briefed this issue; the court takes no position at this time on whether it is a purely legal question or a mixed question of law and fact. The parties may offer

---

access to the surrounding community while they reside in adult homes, is not due to their disability, but to where they currently live or to the manner in which the adult homes are operated." (Def. Opp. 8.)

Defendants' assertion in that "[w]hether the alleged discrimination is 'by reason of' disability is always an element of an ADA claim" is correct. See DAI II, 598 F. Supp. 2d at 311 (noting that "[t]o establish a violation of Title II of the ADA, a plaintiff must prove . . . that he or she was discriminated against by defendants, by reason of his or her disability."). In Olmstead v. L.C., 527 U.S. 581 (1999), however, the Supreme Court held that "[u]njustified isolation . . . is properly regarded as discrimination based on disability." Id., citing Olmstead, 527 U.S. at 600 (emphasis added). A violation of the "integration mandate," as set forth in Olmstead, the ADA, and the federal regulations, is discrimination on the basis of disability. See id. (noting that "[o]ne form of discrimination 'by reason of . . . disability' is a violation of the ADA's so-called 'integration mandate.'") (emphasis added). The court clarifies and reiterates here that the relevant inquiry for trial and post-trial briefing as to what constitutes discrimination "by reason of disability" – as well as what constitutes a violation of the "integration mandate" – is set forth in DAI II.

5

evidence and post-trial briefing on whether relief is barred by the statute of limitations and/or laches. Plaintiff's Motion to exclude this issue is denied.

## II. DEFENDANTS' MOTION

Defendants' Motion seeks to exclude Plaintiff's Exhibits 75, 142, 170, 228, and 229; Joint Exhibit S-103;[3] and Plaintiff's Exhibits 84, 85, 92, 139, 146, 147, 148, 169, 197, 233, and 248. (Def. Mem. 3, 6, 8 (Docket Entry #257).) It also seeks to preclude Plaintiff's fact witnesses from offering expert opinions and opining on the ultimate legal issues. (Id. at 5.) Finally, the Motion seeks to preclude the testimony of Plaintiff's expert witnesses. (Id. at 14, 17.) The court addresses each issue in turn.

### A. Exhibits

#### 1. Plaintiff's Exhibit 75

Plaintiff's Exhibit 75 is a policy paper by an advocacy organization, the New York State Coalition for Adult Home Reform.[4] The document is inadmissible hearsay, because it is not a public record or report and is not admissible under any other exception to the hearsay rule. See DAI I, 2008 WL 5378365, at *21 (excluding report by advocacy organization as inadmissible hearsay). Defendants' Motion is granted in that Plaintiff's Exhibit 75 may not be introduced for the truth of the matters asserted therein. Should Plaintiff seek to introduce that exhibit for another purpose during trial, it may make a motion orally at that time.

---

[3] Defendants stipulated to the use of this exhibit for the limited purpose under Rule 105 of establishing that the State sought recommendations from the Adult Care Facilities Workgroup regarding adult homes and is implementing some of the recommendations as part of Defendants' planning process. (Def. Mem. 6 (Docket Entry #257).)

[4] Defendants provided a copy of this exhibit to the court at the May 1, 2009 pre-trial conference.

2. Plaintiff's Exhibits 142, 170, 228, and 229

The court previously denied Defendants' earlier motion to exclude the documents now designated as Plaintiff's Exhibits 142, 170, 228, and 229. See DAI I, 2008 WL 5378365, at *22. That decision is the law of the case, and the court will not revisit it.

3. The Adult Care Facilities Workgroup Report (Exhibit S-103) and
Plaintiff's Exhibits 84, 85, 92, 139, 146, 147, 148, 169, 197, 233, and 248

Defendants seek to exclude Exhibit S-103, the report of the Adult Care Facilities Workgroup ("Workgroup Report"), asserting that the Workgroup Report is hearsay that does not fall under Rule 803(8)(c) of the Federal Rules of Evidence, because it is not a public record and lacks trustworthiness. (See Def. Mem. 6-14.) Defendants also argue that the Workgroup Report is not admissible under any other exception to the hearsay rule. Defendants similarly assert that numerous specific documents generated or used by the Workgroup and its Sub-Workgroups, and documents created by DOH relating to Medicaid costs – Plaintiff's Exhibits 84, 85, 92, 139, 146, 147, 148, 169, 197, 233, and 248 – are inadmissible hearsay not subject to Rule 803(8)(c), and that some of these exhibits should be excluded pursuant to Rules 402 and 403.

The parties did not include with their submissions copies of all of the exhibits at issue in this part of Defendants' Motion, nor did the court previously rule on the admissibility of those exhibits. The court cannot evaluate the admissibility of the exhibits that were not submitted to the court in connection with Defendants' Motion.[5] Accordingly, Defendants' Motion to exclude Plaintiff's Exhibits 84, 139, 146, 147, 148, 169, 233, and 248 is denied without prejudice and may be renewed at trial.

---

[5] The court has not yet received copies of the exhibits for trial, which need not be provided until the first day of trial pursuant to Section V.D of the court's Individual Rules.

Regarding the remaining exhibits before the court, the court concludes that the Workgroup Report and other documents generated by the Workgroup and Sub-Workgroups, Exhibit S-103 and Plaintiff's Exhibits 85, 92, and 197 are admissible pursuant to Rule 803(8)(c), as discussed below. The "public records" exception in Rule 803(8)(c) provides in relevant part, that "factual findings resulting from an investigation made pursuant to authority granted by law" are not excluded under the hearsay rule, "unless the sources of information or other circumstances indicate lack of trustworthiness." Fed. R. Evid. 803(8)(c). As noted in DAI II, the Workgroup "was convened by then-Governor Pataki in 2002 to evaluate the strengths and weaknesses of the State's adult care facility model and to develop recommendations for new approaches . . . . According to DOH official David Wollner, DOH and OMH participated in formulating these recommendations." DAI II, 598 F. Supp. 2d at 306 n.19.

The court has reviewed the parties' evidence cited and/or submitted in connection with Defendants' Motion regarding the nature, composition, and activities of the Workgroup and the Sub-Workgroups and concludes that Exhibit S-103 and Plaintiff's Exhibits 85, 92, and 197 are public records. These documents are thus admissible pursuant to Rule 803(8)(c) unless Defendants can "come forward with enough 'negative factors' to persuade a court that [the] report[s] should not be admitted." Gentile v. County of Suffolk, 926 F.2d 142, 148 (2d Cir. 1991); see also In re Air Disaster at Lockerbie Scotland on Dec. 21, 1988, 37 F.3d 804, 827-28 (2d Cir. 1994) (recognizing broad admissibility standards for reports under Rule 803(8) unless circumstances indicate untrustworthiness and setting out factors by which to evaluate trustworthiness).

Defendants assert that several findings within the Workgroup Report are untrustworthy. First, they argue that the Workgroup Report should be excluded because the Workgroup's

members hypothesized, in the absence of reliable and current clinical data, that adult home residents fell along a bell curve in terms of the distribution of functional ability and skills required to live independently. (See Def. Mem. 9-10.) Defendants similarly argue that the reports and drafts of the New Models Sub-Workgroup (Pl. Exs. 85, 92, and147), "from which this 'hypothesized' assumption originated," should be excluded. (Id. at 11.) In response, Plaintiff contends that the Workgroup members, who were chosen by Defendants themselves specifically for their expertise and experience in adult care facilities, "developed working assumptions about the needs of adult home residents, despite the state's failure to collect data." (Pl. Opp. 8 (Docket Entry #264).) Plaintiff further asserts that Exhibits 85 and 92 describe the activities, investigations, meetings, and site visits that the New Models Sub-Workgroup undertook to arrive at its conclusions. (Pl. Opp. 10.) The court has reviewed these exhibits and concludes that the Workgroup Report's "hypothesized distribution" of residents of adult care facilities, as well as the reports and draft reports of the New Models Sub-Workgroup (Pl. Exs. 85 and 92), are admissible pursuant to Rule 803(8)(c).[6]

Defendants also argue that the findings of the Workgroup (and its Sub-Workgroup on Payment Structure, see Pl. Exs. 137 and 197) relating to potential Medicaid savings are speculative and unreliable, because adult home residents were identified "based on a data run done by DOH" using an "address matching process" seeking to match the address of Medicaid recipients with the addresses of adult homes. (Def. Mem. 11-12.) They further argue that, given the Workgroup Report's admission that "there are little reliable data on adult home residents . . . a comparison of Medicaid costs of the adult home population with that of populations in other settings alone cannot serve as a trustworthy method of investigation for identifying potential

---

[6] As noted above, the court does not yet have Exhibit 147; Defendants may renew their motion to exclude this exhibit at trial.

Medicaid savings," so Plaintiff's Exhibits 84, 139, 148, 169, 197, 233, and 248 at DOH 0131717-DOH0131727 should be excluded as hearsay and as irrelevant. (Id. at 11-12.) Finally, they argue that a comparison of Medicaid cost data of the adult home and supported housing populations should be excluded under Rule 403, asserting that the prejudicial effect to Defendants outweighs any probative value. (Id. at 13.)

In response, Plaintiff argues that the documents generated by the Workgroup and Sub-Workgroups are public records pursuant to Rule 803(8)(c) and are trustworthy. It also argues that the documents relied on by the Workgroup and Sub-Workgroups containing cost data, which were created by Defendant DOH, are admissible under Rule 801(d)(2) as party admissions. (Pl. Opp. 10.) It also argues that the reports and documents regarding cost are relevant to DAI's claims and Defendants' fundamental alteration defense and should not be excluded under Rule 402, nor should they be excluded under Rule 403. (Id. at 11.)

Of the exhibits discussed above regarding Medicaid costs and savings – portions of S-103 and Plaintiff's Exhibits 84, 137, 139, 148, 169, 197, 233, and 248 – the court can only evaluate at this time the admissibility of the findings of the Workgroup in the Workgroup Report relating to cost savings and Exhibit 197, as only those documents have been submitted to the court. The court concludes that Exhibit S-103 and Plaintiff's Exhibit 197 are admissible pursuant to Rule 803(8)(c). The court declines to exclude Exhibit 197 under Rule 402, as it clearly appears relevant. The parties may argue the question of potential prejudice under Rule 403 at the time the exhibit is offered.

In sum, Defendants' Motion to exclude Exhibit S-103 and Plaintiff's Exhibits 85, 92, and 197 is denied, although Defendant may renew its Motion to exclude Plaintiff's Exhibit 197 under Rule 403 at the time the exhibit is offered. Defendants' Motion to exclude Plaintiff's Exhibits

84, 139, 146, 147, 148, 169, 233, and 248 is denied without prejudice and may be renewed at trial.

B.   **Scope of Testimony of Fact Witnesses**

Defendants seek to preclude two of Plaintiff's fact witnesses, Clarence Sundram and Linda Rosenberg, from testifying "to the same sweeping expert opinions that the Court struck from their affidavits on summary judgment." (Def. Mem. 5.) In particular, Defendants seek to preclude these witnesses from comparing the costs of living in supported housing and adult homes and/or testifying about clinical reasons for adult home residents to move out of adult homes, or the qualifications and/or willingness of adult home residents to move to supported housing. (See id.)

In DAI I, the court set forth the proper scope of lay opinion testimony with respect to these two witnesses. See DAI I, 2008 WL 5378365, at *14-19. Defendants' Motion is granted to the extent that it seeks to limit the scope of the testimony of Mr. Sundram and Ms. Rosenberg at trial in accordance with the previous decision, which is the law of the case. See id. As set forth in that decision, Mr. Sundram may testify as to historical facts about Defendants' service delivery system, Defendants' policies, his own observations over time about adult homes and adult home residents, and the types of costs associated with adult homes. Id. at *15. He may not testify as to the comparative costs of adult homes and supported housing, or the reliability of the methodologies used by Plaintiff's experts. Id. at *16-17. In addition, Mr. Sundram may not testify as to whether there are "programmatic or clinical reasons" for adult home residents to remain in adult homes or to move out. Id. at *16. DAI I does not explicitly address whether Mr. Sundram will offer an opinion as to whether adult home residents are willing to move,

11

however; to the extent that Defendants' Motion seeks to preclude testimony from Mr. Sundram on that topic, that aspect of the Motion is denied without prejudice.[7]

As set forth in DAI I, Ms. Rosenberg may testify to her observations and opinions about Defendants' policies, observations about adult homes, the relative benefits of supported housing, and Defendants' capacity to change the programs they administer. See id. at *17-18. She may not testify as to the qualifications of adult home residents to move to supported housing, the willingness of adult home residents to move, and the comparative costs of adult homes and supported housing. See id. at 18 (striking paragraph 14 of Ms. Rosenberg's affidavit as beyond the scope of lay opinion testimony).

Defendants also seek to exclude fact witnesses from opining on the ultimate legal issues in this case. (Def. Mem. 5.) The court denies this aspect of Defendants' Motion. As this court previously ruled, "[l]ay opinion testimony bearing on the ultimate issue in the case is not inadmissible." Id. at *15; Fed. R. Evid. 704(a); see Lightfoot v. Union Carbide Corp., 110 F.3d 898, 911 (2d Cir. 1997) ("The fact that the lay opinion testimony bears on the ultimate issue in the case does not render the testimony inadmissible."); United States v. Rea, 958 F.2d 1206, 1214-15 (2d Cir. 1992).

C.     **Plaintiff's Expert Witnesses**

Defendants seek to exclude Plaintiff's expert witnesses. (Def. Mem. 14-17.) In particular, they seek to exclude the opinion of Ivor Groves and to "preserve and renew" their previous Daubert motion, which the court denied in its entirety in DAI I. See DAI I, 2008 WL 5378365, at *1-11. As discussed above, DAI I is the law of the case, and the court will not revisit it. Defendants' Motion is thus denied.

---

[7] In DAI I, the court found Mr. Sundram's statement in paragraph 14 of his affidavit that adult home residents "are essentially captives whose presences is essential for the continuation of the proprietor's business but not for their own welfare" admissible as lay opinion testimony. Id. at *16.

As noted above, the court vacates the portion of its May 1, 2009 Order allowing post-trial briefing on the admissibility of Plaintiff's experts. This court already determined that the opinions and testimony of Plaintiff's experts on the qualifications of adult home residents to move to supported housing are admissible. Thus, while Defendants are free to conduct vigorous cross-examine of Plaintiff's experts at trial and may argue in their post-trial briefing that the court should accord the opinions of those experts little or no weight, they may not renew their challenge to the admissibility of those opinions.

## III. PLAINTIFF'S MOTION TO EXCLUDE DEFENDANTS' WITNESS

Plaintiff seeks to exclude Defendants' witness from the Human Resources Administration ("HRA").[8] Plaintiff argues that on April 20, 2009, Defendants indicated that they would call an unnamed HRA witness, and on April 28, 2009, Defendants indicated that they would call "Kathleen Kelly or other representative" of HRA; Plaintiff contends that this witness was never disclosed previously in violation of Rule 26 of the Federal Rules of Civil Procedure. (Pl. Mem. Supp. Mot. Witness 2-3 (Docket Entry #253).) Plaintiff further argues that Defendants' failure to disclose the HRA witness in a timely manner is neither substantially justified nor harmless, and that the witness should be excluded pursuant to Rule 37(c)(1). (Id. at 3.) In response, Defendants argue that they indicated in their initial disclosures that they would call a witness from HRA, and that many documents from HRA were subpoenaed during discovery. (Def. Opp. 2-3 (Docket Entry #263).) Defendants further assert that subject of the proposed witness's testimony, whether an HRA application is necessary for an adult home resident to move to supported housing, is highly relevant and not duplicative of other testimony. (Id. at 3-5.)

---

[8] Plaintiff's Motion also seeks to exclude a witness whom Defendants have since withdrawn from their witness list; this aspect of the Motion is moot.

The court finds that Defendants did not comply with Rule 26 regarding the HRA witness, but declines to preclude this witness from testifying at trial. As the court noted in DAI I, where a party fails to comply with a disclosure requirement, "[d]espite the mandatory language of Rule 37(c)(1), the Second Circuit has held that preclusion is a discretionary remedy, even if 'the trial court finds that there is no substantial justification and the failure to disclose is not harmless.'" DAI I, 2008 WL 5378365, at *12 (quoting Design Strategy, Inc. v. Davis, 469 F.3d 284, 296 (2d Cir. 2006).) The Second Circuit has set forth factors for courts to consider in deciding whether to preclude a witness where a party fails to comply with a disclosure requirement. See id. (citing Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006)). The court has considered these factors and concludes that the subject of the testimony from the HRA witness is sufficiently important that it declines to exclude this witness. At trial, the court will allow Plaintiff broad latitude during cross-examination of this witness, given that Plaintiff cannot depose her prior to trial. Plaintiff's Motion is denied.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion to exclude issues from trial (Docket Entry #258) is GRANTED in part and DENIED in part, Defendants' Motion (Docket Entry #256) is GRANTED in part and DENIED in part, and Plaintiff's Motion to preclude Defendants' witness (Docket Entry #252) is DENIED. In addition, as provided above, the court vacates the portion of its May 1, 2009 Order stating that the parties may submit post-trial briefing on issues already resolved by the court.

SO ORDERED.

Dated: Brooklyn, New York  
     May 8 , 2009

    /s/ Nicholas G. Garaufis  
NICHOLAS G. GARAUFIS  
United States District Judge