UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

DISABILITY ADVOCATES, INC.,

**MEMORANDUM & ORDER**

**03-CV-3209 (NGG)**

Plaintiff,

-against-

DAVID A. PATERSON, in his official
capacity as Governor of the State of New
York, RICHARD F. DAINES, in his official
capacity as Commissioner of the New York
State Department of Health, MICHAEL F.
HOGAN, in his official capacity as
Commissioner of the New York State Office
of Mental Health, THE NEW YORK STATE
DEPARTMENT OF HEALTH, and THE
NEW YORK STATE OFFICE OF MENTAL
HEALTH,

Defendants.

------------------------------------------------------------------X

NICHOLAS G. GARAUFIS, United States District Judge.

In 2003, Plaintiff Disability Advocates, Inc. ("DAI") brought this action on behalf of

individuals with mental illness residing in, or at risk of entry into, certain "adult homes" in New York

City.[1]  (See Compl. (Docket Entry #1).)  Following six years of litigation and a five-week bench

trial, the court found that Defendants "denied thousands of individuals with mental illness in New

York City the opportunity to receive services in the most integrated setting appropriate to their

---

[1] Adult homes are for-profit residential adult care facilities licensed by the State of New York.  The adult homes at issue in this litigation are those with more than 120 beds and in which twenty-five residents or 25% of the resident population (whichever is fewer) have a mental illness.

needs,"[2] and that these actions constitute discrimination in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 791 et seq.  (Sept. 8, 2009 Mem. and Order (Docket Entry #341) ("Trial M&O") 3.)  The court assumes familiarity with that Memorandum & Order.  Although the court found that Plaintiff is entitled to some form of declaratory and injunctive relief, it directed briefing from the parties regarding the particular injunctive remedy to be imposed.  (Id. at 208.)

Subsequently, three non-parties moved to intervene in the action: the United States, the Empire State Association of Assisted Living, and the New York Coalition for Quality Assisted Living.[3]  In this Memorandum & Order, the court rules on the United States' Motion to Intervene (Docket Entry #358) ("Motion").  The United States has moved to intervene as of right under Federal Rule of Civil Procedure 24(a) or, in the alternative, permissively under Rule 24(b).  For the reasons that follow, the court grants the Motion.

Intervention as of right under Rule 24(a) must be granted when an applicant "(1) files a timely motion; (2) asserts an interest relating to the property or transaction that is the subject of the action; (3) is so situated that without intervention the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) has an interest not adequately represented by the other parties."  United States v. Pitney Bowes, Inc., 25 F.3d 66, 70 (2d Cir. 1994).  Failure to satisfy even one of the four requirements will defeat a claim to intervention as of right.  Id.

Since three of the four requirements concern the proposed intervenor's interest in the action, the court first considers the nature of the interest asserted.  The United States identifies

<hr>

[2] The "most integrated setting," according to the federal regulations promulgated by the Department of Justice, is "a setting that enables individuals with disabilities to interact with non-disabled persons to the fullest extent possible." 28 C.F.R. § 35.130(d); 28 C.F.R. pt. 35 app. A.

[3] Additionally, the City of New York submitted a letter to this court requesting leave to participate in the remedial phase of this litigation as a "litigating amicus."

three interests, all of which arise from the Department of Justice's regulatory and enforcement authority under Title II of the ADA: "ensuring that 1) appropriate relief be granted as the remedy for the Title II violations found by this Court; 2) the relief be consistent with the United States' interpretation of the integration mandate of the ADA; and 3) the framework for the remedy can be followed by other courts redressing similar injuries." (Motion 10.) Simply put, the Department of Justice has an interest in the uniform interpretation and enforcement of its regulations under Title II.

Although the court does not diminish the importance of this interest, the structure of Rule 24 suggests that this is not the sort of interest contemplated by Rule 24(a) for intervention as of right. Rule 24(a)(1) speaks generically of interests "relating to the property or transaction that is the subject of the action." In contrast, Rule 24(b)(2) expressly provides for <u>permissive</u> intervention by a federal agency in lawsuits based on federal statutes or regulations within its administrative purview. <u>See</u> <u>Halderman v. Pennhurst State School & Hosp.</u>, 612 F.2d 84, 92 (3d Cir. 1979) (noting that Rule 24(b)(2) makes "specific provision for intervention by governmental agencies interested in statutes, regulations or agreements relied upon by the parties in the action"). This case falls squarely within this provision of the Rule. Here, the ADA authorizes the Department of Justice to promulgate regulations to implement and enforce Title II, 42 U.S.C. § 12134(a), and Plaintiff's claims are based on the "integration mandate" found in the Attorney General's regulations implementing Title II. (Trial M&O 7-8.) Since this is the exact situation specifically contemplated by Rule 24(b)(2), the court declines to consider intervention under the more general terms of Rule 24(a).

The court's discretion regarding whether to grant permissive intervention under Rule 24(b) is very broad. <u>H. L. Hayden Co. v. Siemens Med. Sys., Inc.</u>, 797 F.2d 85, 89 (2d Cir.

1986).  The primary consideration guiding the exercise of discretion is "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."  Id.  In this respect, the court finds it significant that neither party has opposed the United States' Motion.  In fact, Plaintiff urges the court to grant the Motion.  (Pl. Mem. 1 (Docket Entry #373) ("DAI believes that the United States will add valuable expertise and that its addition to the case will not cause delay or otherwise prejudice the parties.").)

Although the United States' Motion comes very late in the litigation process, the court finds that intervention by the United States will not prejudice the original parties or unduly delay the proceedings concerning the appropriate injunctive remedy to be imposed.  Central to this finding is the fact that the United States "seeks no extensions of the briefing schedule for remedies and will rely on the record developed at trial and the Court's orders."  Moreover, the United States' proposed Complaint in Intervention explicitly adopts the court's prior factual findings and legal conclusions in the case.  (Proposed Compl. (Docket Entry #358), at ¶¶ 10, 17.)

Furthermore, the Second Circuit has instructed courts to take a "hospitable attitude" toward "allowing a government agency to intervene in cases involving a statute it is required to enforce."  Blowers v. Lawyers Coop. Publishing Co., 527 F.2d 333, 334 (2d Cir. 1975); see also 7C Wright & Miller, Federal Practice & Procedure § 1912, at 471-72 (2007) (noting that the whole thrust of the amendment adding Rule 24(b)(2) "is in the direction of allowing intervention liberally to governmental agencies and officers seeking to speak for the public interest . . . and courts have permitted intervention accordingly.").  In light of these considerations and the absence of any indication of prejudice or undue delay, permissive intervention is appropriate.  Accordingly, the United States' Motion is GRANTED.

The court directs the United States to file its response to Defendant's proposed remedy no later than November 24, 2009, a deadline the United States has repeatedly assured the court it can meet. Any response by the parties must be submitted no later than December 1, 2009. The court further directs the United States to serve its Complaint in Intervention as expeditiously as possible. However, since the liability phase of this litigation is concluded, the United States may not assert any additional claims or name any additional defendants in its Complaint in Intervention; its pleadings must be congruent to the pleadings of the Plaintiff. Defendant shall have twenty days from the date of service to respond to the intervenor's pleadings.

SO ORDERED.

___/s/ Nicholas G. Garaufis___
NICHOLAS G. GARAUFIS
United States District Judge

Dated: Brooklyn, New York
       November 23, 2009