UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

DISABILITY ADVOCATES, INC.,

                      Plaintiff,

  and

THE UNITED STATES OF AMERICA,

                      Plaintiff-Intervenor

  -against-

DAVID A. PATERSON, in his official
capacity as Governor of the State of New
York, RICHARD F. DAINES, in his official
capacity as Commissioner of the New York
State Department of Health, MICHAEL F.
HOGAN, in his official capacity as
Commissioner of the New York State Office
of Mental Health, THE NEW YORK STATE
DEPARTMENT OF HEALTH, and THE
NEW YORK STATE OFFICE OF MENTAL
HEALTH,

                      Defendants.
------------------------------------------------------------------X

**REMEDIAL ORDER
AND JUDGMENT**

**03-CV-3209**

NICHOLAS G. GARAUFIS, United States District Judge.

      WHEREAS, Plaintiff Disability Advocates, Inc. ("DAI") filed a Complaint on behalf of its constituents ("DAI's Constituents") – individuals with mental illness residing in, or at risk of entry into, adult homes in New York City with more than 120 beds and in which 25 residents or 25% of the resident population (whichever is fewer) have a mental illness (the "Adult Homes") – seeking declaratory and injunctive relief under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("RA"); and

WHEREAS, Defendants the Governor of the State of New York, the Commissioner of Health of the State of New York, and the Commissioner of Mental Health of the State of New York, all in their official capacities, and the New York State Department of Health ("DOH") and the New York State Office of Mental Health ("OMH"), (collectively, "Defendants" or "the State"), answered the Complaint; and

WHEREAS, Plaintiff and Defendants filed motions for summary judgment, which were denied by the court upon consideration of a factual record of more than 13,000 pages and approximately 675 exhibits; and

WHEREAS, the court presided over an 18-day bench trial during which 29 witnesses testified, more than 300 exhibits were admitted into evidence, and the excerpts from the deposition transcripts of 23 additional witnesses were entered into the record, along with a 3,500-page trial transcript; and

WHEREAS, Plaintiff and Defendants submitted proposed findings of fact and conclusions of law after trial, and the court issued a 210-page Memorandum and Order Setting Forth Findings of Fact and Conclusions of Law, dated September 8, 2009, finding that Defendants have discriminated against DAI's Constituents in violation of the integration mandate of the ADA and the RA, that virtually all of DAI's Constituents are qualified to receive services in supported housing, and that Defendants failed to establish that the relief sought by Plaintiff would constitute a fundamental alteration of the State's mental health service system; and

WHEREAS, the court found that Plaintiff is entitled to declaratory and injunctive relief and ordered (1) the State to submit to the court a proposed remedial plan in advance of the issuance of an injunction and (2) Plaintiff to respond to the State's proposed remedial plan; and

WHEREAS, the court allowed the United States to become a party to the action as a Plaintiff-Intervenor and granted amicus curiae status to the City of New York ("the City"), the Empire State Association of Assisted Living ("ESAAL"), and the New York Coalition for Quality Assisted Living ("NYCQAL"), and has received submissions from all four regarding the remedy in this case; and

WHEREAS, the court has considered the State's proposed remedial plan and Plaintiff's response thereto, as well as the responses submitted by Plaintiff-Intervenor and the amici, and has issued a Memorandum setting forth its reasons for rejecting the State's proposal and adopting Plaintiff's proposed remedial order, as set forth herein;

IT IS HEREBY ORDERED and ADJUDGED that:

1. Within four years of entry of this Order, Defendants shall ensure that (a) all Current Adult Home Residents who desire placement in supported housing have been afforded such placement if qualified, (b) all Future Adult Home Residents who desire placement in supported housing are promptly afforded such placement if qualified, and (c) no individual with mental illness who is qualified for supported housing is offered placement in an Adult Home unless, after being fully informed, he or she declines the opportunity to receive services in supported housing. For purposes of this Order, the following terms have the meanings specified below:

a. "Current Adult Home Residents" are DAI's Constituents who are residents of an Adult Home on the date of this Order.

b. "Future Adult Home Residents" include both DAI's Constituents who are admitted to the Adult Homes during the four-year transition period and DAI's Constituents who are admitted to the Adult Homes after the four-year transition period who desire placement in supported housing.

c. "Supported housing" refers to scattered-site supported housing funded by OMH, a setting in which individuals live in their own apartment and receive services to support their success as tenants and their integration into the community.

d. The phrase "declines the opportunity to receive services in supported housing" does not include situations where a person declines supported housing because it is not promptly available, and therefore chooses an adult home as an alternative to continued unnecessary hospitalization, homelessness or discharge to a shelter.

2. At the conclusion of the four-year period, Defendants must ensure, on a permanent and ongoing basis, that (a) no individual with mental illness who is qualified for supported housing is offered placement in an Adult Home unless, after being fully informed, he or she declines the opportunity to receive services in supported housing, and (b) any and all Current Adult Home Residents and Future Adult Home Residents who desire placement in supported housing are promptly afforded such placement if qualified.

3. The court will retain jurisdiction for as long as necessary to ensure continuing compliance with this Order, but not less than four years. After the four-year period, the court may terminate jurisdiction on consent of the parties, or on motion of any party for good cause shown.

4. Defendants will develop a sufficient number of supported housing beds to ensure compliance with paragraphs 1 and 2 above. During each of the first three years following entry of this Order, Defendants will develop a minimum of 1,500 supported housing beds for DAI's Constituents. Defendants will continue to develop supported housing beds for DAI's Constituents at a rate of 1,500 per year until such time as there are sufficient supported housing beds for all of DAI's Constituents who desire such housing.

5. Through a Request for Proposals ("RFP") process, Defendants will contract with a sufficient number of supported housing providers to develop and provide the supported housing required by paragraph 4 above. Defendants' contracts with these providers will require providers to (a) develop and provide supported housing to DAI's Constituents, (b) secure necessary support services for residents of such housing, and (c) conduct in-reach to DAI's Constituents, as described in paragraph 6 below. Defendants will ensure that their current in-reach efforts at state-operated Psychiatric Centers include in-reach to DAI's Constituents at risk of admission to Adult Homes from those settings. Defendants shall provide, or arrange for, training to the supported housing providers awarded contracts pursuant to this paragraph.

6. The contracts awarded pursuant to paragraph 5 will require providers to conduct frequent and effective in-reach – that is, going into the Adult Homes and developing relationships with DAI's Constituents to build trust and actively support these individuals in moving to supported housing. In conducting in-reach, providers will, among other things:

   a. Explain fully the benefits and financial aspects of supported housing;

   b. Facilitate, and accompany DAI's Constituents on, visits to supported housing apartments;

   c. Assess DAI's Constituents' interest in supported housing;

   d. Determine eligibility for supported housing pursuant to paragraph 10 below;

   e. Explore and address the concerns of any of DAI's Constituents who decline the opportunity to move to supported housing or are ambivalent about moving to supported housing, despite being qualified for such housing;

   f. Review DAI's Constituents' housing preferences with reasonable regularity;

   g. Identify the services each eligible individual needs to successfully transition to and live in supported housing and arrange for the individual to timely receive those services; and

   h. Employ Peer Bridgers as appropriate to assist in the above activities. Peer Bridgers are individuals in recovery from mental illness who are trained and

paid to help others with mental illness make a transition from living in an institutional setting to a community setting.

7. In advance of issuing the RFPs described in paragraph 5 above, and no later than 60 days from the date of this Order, Defendants shall provide Plaintiff and Plaintiff-Intervenor with copies of the RFPs it proposes to issue. Within 20 days of receipt of such documents, Plaintiff and Plaintiff-Intervenor will provide a written response to Defendants commenting on the sufficiency of the RFPs to achieve adequate relief, and the parties will negotiate in good faith with respect to the terms of the RFPs. If the parties are unable to resolve any dispute with respect to the content and terms of the RFPs within 120 days of this Order, such dispute shall be submitted to the court.

8. Defendants will ensure that DAI's Constituents who move to supported housing have access to the array and intensity of services and supports they need to successfully transition to and live in supported housing. Defendants will contract for supportive services, including case management services and Assertive Community Treatment ("ACT"), sufficient to meet the needs of DAI's Constituents who move to supported housing. At least quarterly, Defendants will evaluate the need, if any, for expansion of such services. Defendants shall timely contract for additional services as needed to enable DAI's Constituents to successfully transition to and live in supported housing.

9. DAI's Constituents' eligibility for ACT will be determined by OMH's current statewide ACT guidelines.

10. Defendants shall deem DAI's Constituents qualified for supported housing unless they have one of the following specific characteristics: (a) severe dementia, (b) a high

level of skilled nursing needs that cannot be met in supported housing with services provided by Medicaid home care or waiver services,[1] or (c) are likely to cause imminent danger to themselves or others. The determination of whether such a condition exists shall be made by the providers awarded contracts to develop supported housing and conduct in-reach pursuant to paragraph 6 above. If such a condition is found to exist, the individual may still be deemed qualified for supported housing if the provider determines, after further assessment and subject to the concurrence of OMH, that the individual could be served successfully in supported housing. The contracts awarded pursuant to paragraph 5 will provide for OMH review of such cases where the provider finds a disqualifying characteristic but nevertheless believes that the individual should be deemed qualified.

11. Defendants shall require that, when case managers, clinicians, Adult Home staff, and others discuss housing options with DAI's Constituents, they accurately and fully inform them about supported housing, its benefits, the array of services and supports available to those in supported housing, and the Supplemental Security Income ("SSI"), rental subsidy, and other income they will receive while in supported housing.

12. The court has afforded Defendants the opportunity to respond to Plaintiff's proposal that a Monitor be appointed. Based on Defendants' response and Plaintiff's submissions, the court finds the appointment of a Monitor appropriate under both its inherent equitable powers and Rule 53 of the Federal Rules of Civil Procedure. A

---

[1] Medicaid waiver programs allow states to provide disabled individuals with home and community-based care, as an alternative to providing those services in an institutional setting. See 42 U.S.C. § 1396n(c)(1).

Monitor is needed to undertake post-trial tasks that cannot be effectively and timely conducted by an available District Judge or Magistrate Judge of the district.

13. The court will appoint a Monitor who is experienced in the development, management, and oversight of community programs serving people with mental illness.  The duties and powers of the Monitor will be detailed in an order accompanying the Monitor's appointment.  The duties shall include, among other things, monitoring Defendants' compliance with this Order, identifying potential areas of noncompliance, facilitating the resolution of disputes concerning compliance without the court's intervention, and recommending appropriate action by the court in the event an issue cannot be resolved by discussion and negotiation among the Monitor and the parties.

14. Within one week of the entry of this Order, the parties shall meet and confer in an effort to agree upon suitable Monitor candidates and the specific duties and powers of the Monitor for joint proposal to the court.  The parties shall submit at least two names upon which they agree.  If the parties are unable to agree, each of the parties shall, within two weeks of entry of this Order, propose to the court at least two persons qualified to serve as a Monitor.  Additionally, the parties shall each submit to the court a proposed order and a memorandum in support of that proposed order detailing the Monitor's duties and powers.

15. Within 45 days of his or her appointment, and after consultation with the parties, the Monitor will submit to the court a proposed budget setting forth his or her proposed compensation, the proposed compensation of any necessary staff, and an estimate of

other necessary expenses. Defendants will be responsible for payment of the proposed budget items approved by the court.

16. At least once every 90 days, Defendants shall provide the Monitor, Plaintiff, Plaintiff-Intervenor, and the court with a detailed report containing data and information sufficient to evaluate Defendants' compliance with this Order. This reporting obligation will commence upon the appointment of the Monitor. The report shall contain, among other things, information describing (a) the status of the RFP process described in paragraph 5, (b) the number of DAI's Constituents who have been offered supported housing, (c) the number of DAI's Constituents who have accepted supported housing, (d) the identity of the supported housing providers serving such individuals and providing in-reach to Adult Home residents, (e) the number of DAI's Constituents who have been determined to be unqualified for supported housing pursuant to paragraph 10 and the reasons for such determinations, (f) reasons why DAI's Constituents, if any, declined supported housing, (g) in-reach efforts, (h) the number of new admissions to each Adult Home and source of payment, and (i) the current census of each Adult Home.

17. Defendants will carefully monitor whether DAI's Constituents are being discouraged by Adult Home operators or others from exploring alternatives to Adult Homes, and, if so, take corrective action. Defendants shall report such incidents to the court, the Monitor, and the parties.

18. As the prevailing party, Plaintiff is entitled to reasonable attorneys' fees and costs. 42 U.S.C. § 12205; 29 U.S.C. § 794a(b). Pursuant to Federal Rule of Civil Procedure

54(d)(2)(B), the court extends the deadline for submission of Plaintiff's fee application. The parties are directed to confer and submit to the court within 14 days of this Order a briefing schedule for Plaintiff's fee application.

19. Plaintiff is entitled to reasonable fees and expenses for post-judgment monitoring and enforcement of this Order.

WHEREFORE, this Order constitutes the judgment of the court.

SO ORDERED.

Dated: Brooklyn, New York
       March 1, 2010

　　/s/ Nicholas G. Garaufis　　
NICHOLAS G. GARAUFIS
United States District Judge